## In re HEYMANN.

(Supreme Court, Appellate Division, First Department. April 4, 1913.)

·1. ATTORNEY AND CLIENT (§ 45*)—DISBARMENT.

Under Laws 1912, c. 253, providing that the Appellate Division of the Supreme Court is authorized to censure, suspend, or disbar any attorney who is guilty of professional misconduct, malpractice, deceit, crime, or misdemeanor, or any conduct prejudicial to the administration of justice, the Supreme Court may disbar an attorney who forged a satisfaction which he filed to discharge a judgment rendered against him in his individual capacity; it not being essential that the offense of the attorney be committed in his professional capacity.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 63; Dec. Dig. § 45.*]

2. ATTORNEY AND CLIENT (§ 53*)—DISBARMENT—EVIDENCE—SUFFICIENCY.

In a proceeding wherein an attorney was charged with misconduct. evidence *held* to establish that respondent, an attorney, forged and filed a satisfaction of a judgment against him, and that he was guilty of such misconduct rendering disbarment proper.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. § 53.*]

In the matter of Henry M. Heymann, an attorney, charged with professional misconduct. Respondent disbarred.

See, also, 139 N. Y. Supp. 1126.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN; CLARKE, and SCOTT, JJ. ·

Lyttleton Fox, of New York City, for petitioner.
Franklin Pierce, of New York City, for respondent.

INGRAHAM, P. J. Respondent is charged with having filed or caused to be filed in the office of the clerk of the Municipal Court what purported to be a satisfaction of a judgment against a hotel company and the respondent personally, which instrument purported to be signed and acknowledged by Robert C. Durland, the attorney for the judgment creditor, and which stated that the judgment had been fully paid, and with having received from the clerk of the Municipal Court a certificate of the satisfaction of the judgment, which he filed in the office of the county clerk of the county of New York. This instrument was a forgery, and no part of the judgment had been paid. The respondent submitted an answer denying that he caused this instrument to be filed, and alleging that he had no knowledge of the facts in relation thereto. The case was referred to the official referee, who, after a careful investigation, has reported that the re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

spondent caused the forged satisfaction piece to be filed, with knowledge of the facts, and that the charges of the petitioner in this respect have been established by the evidence.

[1] We are met at the outset by a claim of the respondent that the matter on which he is sought to be disbarred was wholly disconnected with his professional character, and that, if he has committed the crime of forgery, the criminal law affords ample remedy for his punishment, and that resort thereto should be invoked before proceedings are here taken; or, in other words, that, if this respondent had forged and filed this satisfaction piece while acting as attorney for another, the court could take cognizance of the proceeding, but that, if he had forged and filed this satisfaction piece while acting as attorney for himself, the court could take no proceeding to remove from its roll of attorneys and counselors at law a person who had been guilty of such an offense. We expressed our views upon such an objection, when we were proceeding under section 88, c. 35, Laws of 1909, or the Judiciary Law, before its amendment by chapter 253, Laws of 1912, in the Matter of Alexander, 137 App. Div. 770, 122 N. Y. Supp. 479. But by chapter 253, Laws of 1912, that section was amended so as to provide that:

"The Appellate Division of the Supreme Court in each department is authorized to censure, suspend from practice or remove from office any attorney and counselor at law admitted to practice as such who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice."

If any question existed before this amendment, it is now clear that any attorney guilty of an act which is properly characterized as "fraud, deceit, crime or misdemeanor" should be disbarred, whether in the performance of the act he was acting as attorney for himself or for another.

[2] The facts in this case, as established by the evidence, are that on or about the 30th of November, 1909, one Louis Annin Ames recovered a judgment in the Municipal Court against the Riccodonna Hotel Company and the respondent for $338.17, which was afterwards docketed in the office of the clerk of the county of New York. The respondent's brother, Seymour M. Heymann, was a party defendant in that action, but process does not seem to have been served upon him. The action was to recover on certain promissory notes, made by the hotel company and indorsed by the respondent and his brother. After the recovery of this judgment, and on the 4th of December, 1909, the respondent called upon the plaintiff's attorney and in writing requested him not to record the judgment until the respondent could see him. This request was apparently refused, for upon the same day, the 4th of December, 1909, a transcript of this judgment was filed in the office of the clerk of the county of New York. The respondent was the treasurer of this hotel company and a stockholder therein. There had been a lease of the hotel property which contained an option by which the respondent could purchase the property, and he was endeavoring to secure loans on this property by which to purchase it. The negotiations for the loans terminated some

time about the 10th or 15th of December, 1909, and he was unable to procure the loans. On the 7th of February, 1910, there was filed with the clerk of the Municipal Court what purported to be a satisfaction piece of this judgment, which purported to be signed by the plaintiff's attorney in that action, and which purported to be acknowledged on the 23d of December, 1909, before one "Robert C. Tracy" as a notary public, and which purported to be indorsed, "Robert C. Durland, Attorney for the Plaintiff." Upon the presentation of this instrument to the clerk of the Municipal Court, he issued the usual certificate, certifying that the judgment had been fully satisfied and discharged of record, and this transcript of the satisfaction of the judgment was filed in the office of the clerk of the county of New York on the 17th of February, 1910. This certificate of satisfaction was indorsed: "Edward G. Delany, Defendant's Attorney." On the 15th of February, 1910, the plaintiff's attorney issued an execution to the sheriff of the county of New York upon this judgment, which execution was placed in the hands of the sheriff. Several days after the execution was issued the deputy sheriff telephoned to the plaintiff's attorney that the judgment had been satisfied, and demanding his poundage. Plaintiff's attorney testified that he had a conversation by telephone with respondent, whose voice he recognized, in which he stated to the respondent: "I see that you have satisfied that judgment that I recovered against you for Louis Annin Ames." To which the respondent replied, "Yes, sir;" and the attorney said, "Where did you get the satisfaction piece?" Respondent replied: "You gave it to me at your office about the time that it is dated." The attorney replied: "Well, that satisfaction piece is forged, and I insist on the money being paid on that judgment at once." Respondent replied: "Now, Durland, don't get excited about this; that judgment will be paid. That judgment is just as good as gold." The respondent, however, having ascertained that the forgery of the satisfaction piece had been discovered, on the 25th of February, 1910, served a motion on notice on the plaintiff's attorney to vacate the satisfaction of the judgment and to reinstate and restore the judgment. That motion was made upon an affidavit of the respondent, which stated: That he was treasurer of the Riccadonna Hotel Company and one of the defendants. "That the satisfaction of judgment for $338.17, in favor of the plaintiff and against the defendants above named, and which was filed in the office of the clerk of this court on the 17th day of February, 1910, had previously to that date been in deponent's possession, and had by an oversight on the part of deponent's office been filed on said date in the office of the clerk of this court, and said judgment was in consequence marked satisfied on the judgment docket and records of this court. That deponent now desires to have said mistake and oversight corrected, and said satisfaction of judgment filed as aforesaid canceled, vacated, and set aside, and said judgment reinstated and restored upon the judgment docket and upon the records of this court." That affidavit was verified on the 25th day of February, 1910, before a notary public and on that affidavit the Municipal Court canceled the satisfaction of the judgment.

It seems to be conceded that this satisfaction piece was a forgery, that it had never been signed by the plaintiff's attorney, by whom it purported to have been executed, and that there was no such notary public as the person before whom it purported to have been acknowledged. The only question is as to who is responsible for the preparation and filing of this instrument. There are three parties that had to do with this transaction—one was plaintiff and his attorney, Mr. Durland; the other was the clerk of the Municipal Court, with whom the instrument was filed; the third was the defendants against whom the judgment had been recovered. As this instrument was a forgery, it was not suggested that the plaintiff or his attorney had anything to do with the execution or filing of the satisfaction piece. It is not suggested that the clerk of the Municipal Court had anything to do with it, except to receive what he believed to be a valid satisfaction piece and to issue the proper certificate. That leaves the defendants as the only ones who could have had any part in filing the forged satisfaction piece, and satisfying the judgment upon the forged instrument. There is no suggestion in the record that in these transactions any one else was acting for the hotel company except the respondent. The evidence on behalf of the petitioner shows that the respondent not only called on Mr. Durland, the attorney, who had obtained the judgment, but upon his client, requesting that the judgment be not docketed until he could have an opportunity to sell the property, or procure a loan or make other arrangements by which it could be paid. On behalf of the respondent the respondent and his brother were called. The respondent testified that he did not know anything about the discharge of this judgment, and had nothing to do with putting it on record. He testified that on the 15th or 16th of February, 1910, a deputy sheriff called on him, and said he had an execution against the hotel company, but the respondent said there was nothing there of the hotel company, and so he went away. The following day the deputy sheriff called again on respondent with the same statement, but at neither of these meetings was anything said about the execution being against him personally, and that on neither of these days did he know about any discharge or anything that affected the judgment. He further testified that on the next day his brother told him that Mr. Durland had telephoned them there was a satisfaction piece on record that was a forgery; that the following morning the respondent went to the Municipal Court, and saw the alleged satisfaction of judgment; that he had never seen that satisfaction of judgment before. He further testified that after that Mr. Durland served him with a notice of motion to vacate the satisfaction of judgment; that the next day he saw Mr. Durland; that he told Mr. Durland that this was virtually a personal transaction between Mr. Ames of Annin & Co. and himself; that he himself would draw papers for a motion to vacate the satisfaction of judgment, which Mr. Durland told him to go ahead and do, and that was all of that interview. He then dictated the affidavit to have the satisfaction of the judgment vacated; that he did not dictate this affidavit in the form in which it appears; that the

person to whom he dictated the affidavit was not his regular stenographer, but a substitute, whose name he did not know and whom he could not produce; that she brought this affidavit to him, and he thought it was all ·right, and he signed it and swore to it without reading it. That is all the explanation he had to make of· the execution and filing of this forged instrument. On cross-examination the respondent's recollection failed in many important particulars. It appeared that the lease to the property had expired years before and the option to purchase had thus expired, that the hotel company had gone out of business, and that no one was interested with this respondent in making this loan. He produced no one who was employed in his office at the time, except his brother, who was sharing his offices with him. He said there was a Mr. Delany, whose name appeared on the back of the certificate of satisfaction issued by the clerk of the Municipal Court, employed in the office of respondent, and he was an attorney, and that he is still employed in the office of respondent as managing clerk, but how the name of "Edward G. Delany" got on the back of this certificate of satisfaction is not explained. He admitted that he had made no investigation to ascertain who committed the forgery. The brother of the respondent was also called as a witness, and he said he had been associated with the respondent for some years, but was not a lawyer. The attorney who. represented the respondent and whose name was on the back of the certificate of satisfaction issued by the clerk of the Municipal Court was not called as a witness. Therefore we have the fact that this forged satisfaction piece was filed, that the hotel company had gone out of existence, and had no officers except the respondent and his brother, had no property, and the only one from whom this judgment could be collected was the respondent. No one is suggested who would have ·a motive for securing the satisfaction of this judgment except the respondent, and there is no explanation given or suggestion made as to who else could have forged the satisfaction piece or filed it. Somebody must have paid the fees for satisfying the judgment and filing the certificate of satisfaction, and the respondent relies upon his bare, uncorroborated assertion that he knew nothing about it. The conclusion is irresistible that it was this respondent, who was responsible for this satisfaction piece, for the discharge of the judgment, and for filing the certificate in the office of the county clerk. We have the affidavit of the respondent that he'had the satisfaction piece in his office for some time before it was filed, and that it was filed by mistake. His explanation of that affidavit is entirely unsatisfactory. The explanation does not explain. Here was an· affidavit upon a single sheet of paper that on its face contains a statement which convicts the respondent. He admitted dictating the affidavit, but says the stenographer to whom he dictated it made a mistake, and yet he signed and swore to the affidavit. The statement of uneducated people, when confronted with affidavits that contradict their statements, that the affidavits were made without reading them, is common. But for a lawyer, whose duty it is to know that a statement to which he swears is a true statement,

the fact that he swore to an affidavit of this kind, when he had been in substance charged with forgery, is one that cannot be accepted. The whole evidence in this case, including the examination of the respondent himself, convinces us that he is not a person who should remain a member of the profession.

He is therefore disbarred. All concur.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.